Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KACHUN WONG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>     Plaintiff,<br><br>     v.<br><br>BAKER TILLY HONG KONG LIMITED, ANDREW DAVID ROSS, and HELENA LAIHA KWOK<br><br>     Defendants. | CASE No.:<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

     Plaintiff Kachun Wong, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against the defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included,

1

among other things, (a) review and analysis of relevant filings made by China

North East Petroleum Holdings Limited ("CNEP" or the "Company") with the

United States Securities and Exchange Commission (the "SEC"); (b) review and

analysis of CNEP's public documents; (c) information readily available on the

internet; and (d) review and analysis of public documents concerning CNEP's

independent auditor, the defendants Baker Tilly Hong Kong Limited, Andrew

David Ross, and Helena Laiha Kwok.  Plaintiff believes that substantial

evidentiary support will exist for the allegations set forth herein after a reasonable

opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting

of all persons and entities other than the defendants, who purchased the common

stock of CNEP between January 1, 2010 and April 4, 2013, inclusive (the "Class

Period"), seeking to recover damages caused by the defendants' violations of

federal securities laws (the "Class").

2.      During the Class Period, Defendants (defined below) knowingly

ignored red flags at CNEP regarding related-party transactions. Despite this

knowledge, Defendants issued an unqualified audit opinion stating that the

financial statements contained in CNEP's 2009 Form 10-K were audited in

accordance with Public Company Accounting Oversight Board ("PCAOB")

standards and in conformity with U.S. Generally Accepted Accounting Principles ("GAAP") and U.S. Generally Accepted Auditing Standards ("GAAS").

3.      Defendants failed to abide by PCAOB standards as well as U.S. GAAP and GAAS thereby materially misleading and harming investors.

## **JURISDICTION AND VENUE**

4.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

5.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

6.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the alleged misstatements were transmitted into this District.  Plaintiff is also a citizen of California.

7.      In connection with the acts, conduct and other wrongs alleged herein, the defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

Class Action Complaint for Violation of the Federal Securities Laws

## **PARTIES**

8.     Plaintiff Kachun Wong purchased CNEP common stock during the Class Period as set forth in his certification, filed herewith, and has suffered damages as a result.

9.     Defendant Baker Tilly Hong Kong Limited ("Baker Tilly") is a PCAOB-registered audit firm based in Hong Kong.  During the class period, Baker Tilly issued a "clean" audit report containing an unqualified opinion that was filed with CNEP's financial statements in CNEP's Form 10-K for the year ended December 31, 2009.  Baker Tilly became CNEP's auditor on January 29, 2010.

10.     Defendant Andrew David Ross ("Ross") is the managing director of Baker Tilly and Chairman of its executive committee.  Ross was also the lead engagement director on the CNEP audit, and authorized the issuance of Baker Tilly's audit report.

11.     Defendant Helena Laiha Kwok ("Kwok") was a shareholder and director at Baker Tilly.  She was the director in charge of the 2009 year-end audit of CNEP.

12.     Baker Tilly, Ross, and Kwok are collectively referred to herein as Defendants.

## **RELEVANT NON-PARTIES**

4

13.     China North East Petroleum Holdings Limited ("CNEP") is a Nevada corporation engaged in oil exploration, production, and drilling through its operating subsidiaries located in the People's Republic of China ("China" or the "PRC").  At all relevant times, CNEP's common stock was traded on the NYSE under the ticker "CNEP."

14.     On December 17, 2014, the SEC filed a settled enforcement against Baker Tilly, Ross, and Kwok instituting sanctions and remedial measures against Baker Tilly, Ross, and Kwok for engaging in improper professional conduct, including violation of numerous PCAOB standards, when they misled investors by issuing false and misleading audit reports in connection with CNEP (the "SEC Action").  The SEC Action is captioned *In the Matter of Baker Tilly Hong Kong Limited, Andrew David Ross, CPA, and Kwok Laiha Helena, CPA,* File No. 3-16324.   Information contained in the SEC Action was unknown to the public until the release of the settled enforcement on December 17, 2014.

15.     It was not until SEC Action until investors were on notice of facts establishing Defendants' scienter.

## SUBSTANTIVE ALLEGATIONS

16.     CNEP retained Defendants to conduct the audit of CNEP's financial statements for the year ending December 31, 2009. Defendant's retention began in January 2010.

17.     After close of market on February 23, 2010, CNEP shocked investors stating that it would have to revise previously issued financial statements for 2008 and 2009. The restatement was prompted by comments received from the SEC. The press release stated in relevant part:

> Item 4.02.  Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.
>
> [A]s a result of the preparation of the responses to comments China North East Petroleum Holdings Limited (the "Company") received from the Securities and Exchange Commission (the "SEC") in connection with the SEC's review of the Company's Form 10-K for the year ended December 31, 2008, the Company determined that the Company's financial statements for the year ended December 31, 2008, and each interim quarter within that year, and for the quarters ended March 31, 2009, June 30, 2009 and September 30, 2009 should no longer be relied upon as a result of certain non-cash errors contained therein regarding the accounting for: (i) warrants issued in conjunction with certain financings in 2008 and 2009, which warrants should have been classified according to EITF-0019 as liability instruments rather than equity instruments; (ii) interest expense calculated using the effective interest method that should have been recorded in each of the reporting periods in question, arising from those certain financings in 2008 and 2009; (iii) changes in the fair value of the reclassified warrants; (iv) ceiling test impairment calculations prepared by the Company for the reporting periods ended December 31, 2008 and March 31, 2009; (v) depreciation, depletion and amortization expenses related to the Company's oil and gas properties, net; (vi) recognition of employee stock-based compensation expense; and (vii) a March 5, 2009 modification of the February 28, 2008 secured debenture, which modification should have been treated as an extinguishment pursuant to EITF 96-19.

Class Action Complaint for Violation of the Federal Securities Laws

18.     As a result of the disclosures, the price of CNEP securities dropped $0.69 per share or more than 7% to close at $8.68 per share on February 24, 2010.

19.     According to the SEC Action, while working on CNEP's 2009 10-K, on April 14, 2010 CNEP's chairman of the audit committee questioned a line item on the draft of the financial statement that showed $3.89 million was owed to the Company from a CNEP shareholder. CNEP's CFO said that this line item reflected money owed to CNEP from CNEP director Ju – the mother of CNEP's CEO Wang. The CFO told the audit committee that Ju and Wang regularly transferred money to and from CNEP's bank accounts and their personal bank accounts.

20.     Concerned, when CNEP's audit committee learned of these related-party transactions, it retained John Lees & Associates ("JLA") to conduct a forensic audit of the Company.

21.     On April 15, 2010, CNEP issued a press release announcing that it was delaying the filing of its annual report for the year ending December 31, 2009. This disclosure caused the price of CNEP's securities to fall $0.75 per share or by 7.5%.

22.     On April 16, 2010, CNEP revealed in a press release filed as an exhibit to Form 8-K with the SEC that (i) CNEP was facing delisting by NYSE AMEX due to its failure to file timely financials reports; (ii) Its internal investigation had uncovered certain potential internal control deficiencies over

Class Action Complaint for Violation of the Federal Securities Laws

financial reporting in connection with certain expenditures relating to business development activities and the accounting treatment of certain of the Company's accounts payables; and (iii) CNEP's Audit Committee would "conduct a thorough review of the situation and to determine what corrective action, if any, should be taken."

23.     As a result of these additional disclosures, CNEP's securities fell $1.02 per share or more than 11% for the next two trading sessions closing at $8.08 per share on April 19, 2010.

24.     When JLA sent its preliminary forensic report to CNEP, CEO Wang was placed on leave and resigned from his position of Chairman of the Board on May 23, 2010. Director Ju, CEO Wang's mother, resigned as a director of CNEP on May 23, 2010.

25.     On May 27, 2010 CNEP issued a press release announcing that its CFO, Zhang Yang, resigned as well as other members of management including CEO Wang and Director Ju as stated above. The press release also announced that NYSE AMEX had halted trading of CNEP stock on May 25, 2010 for failing to be in compliance with listing standards due to the delay in filing the 2009 Form 10-K. The press release stated in relevant part:

> On May 25, 2010, the Company received a written notice from NYSE AMEX LLC ("AMEX") advising that the Company is not in compliance with AMEX's continuing listing criteria set forth in Sections 134 and 1101 of the NYSE Amex LLC Company Guide (the "Company Guide").  Specifically, AMEX noted that the Company has

not timely filed its annual report on Form 10-K for the fiscal year ended December 31, 2009 and its quarterly report on Form 10-Q for the quarter ended March 31, 2010 (together, the "Reports"). In addition, AMEX stated that the Company's failure to file its Reports is a material violation of its listing agreement. Pursuant to 1003(d) of the Company Guide, AMEX is authorized to suspend, and unless prompt corrective action is taken, remove the Company's common stock from AMEX. AMEX halted trading of the Company's common stock on the same day.

***

The Company also previously disclosed in a press release issued on April 16, 2010 and as an exhibit to its current report on From 8-K filed on April 16, 2010, that, in the process of the Company's 2009 year end audit review, the Company identified potential internal control deficiencies over financial reporting in connection with certain expenditures relating to business development activities and the accounting treatment of certain of the Company's accounts payables. In response, on April 15, 2010, the Board of Directors directed and authorized the Audit Committee of the Board of Directors (the "Audit Committee") to conduct a thorough review of the situation and to determine what corrective action, if any, should be taken.

On April 19, 2010, the Audit Committee retained the services of John Lees & Associates Limited of Hong Kong ("JLA") to conduct a forensic audit of the Company's bank accounts with respect to the expenditures relating to business development activities in question. **The forensic audit preliminarily found that in 2009, cash transfers occurred between the bank accounts of the Company and its subsidiaries and the personal bank accounts of Mr. Hongjun Wang, the Company's chief executive officer, and Ms. Guizhi Ju, a Company director and mother of Mr. Hongjun Wang. The forensic audit has confirmed that some of the transferred funds were used to pay the Company's expenses.** To date, there is no indication that any of the funds were used for personal purposes. The forensic audit is ongoing.

(emphasis added)

26.     Defendants needed the new CFO of CNEP to sign a management representation letter for the audit of the 2009 financial statements. The new CFO would not sign the management representation letter needed by Defendants because he was not familiar with the Company's historical financial information.

27.     Defendants Ross and Kwok and the engagement team accepted CNEP's representation letter even though it only was signed by the acting CEO who was assigned principal financial officer responsibilities a mere three weeks earlier.

28.     On July 10, 2010 JLA submitted its final forensic accounting report to CNEP ("Forensic Report").

29.     According to the SEC Action, the Forensic Report stated numerous red flags of internal control deficiencies including:

a.  176 related-party transactions totaling approximately $59 million during 2009. Of the $59 million, approximately $28 million went from CNEP to Wang and Ju, equaling around 41% of CNEP's 2009 reported annual revenues;

b.  Approximately $11 million that Wang and Ju allegedly loaned to CNEP, as well as expenses paid by Wang and Ju on behalf of CNEP;

Class Action Complaint for Violation of the Federal Securities Laws

c. Approximately $20 million that would have remained due from Wang and Ju at the end of 2009 was reduced to zero through year-end consolidation and post-year-end closing adjustments that lacked supporting documentation or were otherwise questionable.

d. The ability of management to override internal controls and access CNEP's bank accounts;

e. Unauthorized related-party transactions, including cash withdrawals, payments to vendors, and investments made by insiders on behalf of CNEP without authorization were possible, in part, because of insufficient verification of payments;

f. Inadequate segregation of duties among employees in accounts payable and cash management areas that could result in the misappropriation of company funds;

g. Failure to implement and comply with Chinese Interim Cash Control Regulations and Internal Policy concerning cash disbursements, including the lack of a policy related to amounts that could be advanced to company personnel to make purchases on behalf of the company;

h. Incomplete audit trail for the related-party transactions;

i. Convoluted and inappropriate account offsets of amounts owed to CNEP by insiders, including Wang and Ju, based on agreements

that were mostly unsigned and contained contradictory statements
or amounts;

j.  Insufficient internal controls to require written approval for the
period-end adjustments could result in intentional or unintentional
errors in financial statements; and

k.  Varied explanations and numerous other abnormities were noted in
documentation of the transactions related to fixed assets
prepayments to suppliers purportedly paid through the Ju's
personal account.

30.    On August 8, 2010 CNEP's chairman of the audit committee resigned
citing that he believed CNEP had not adequately addressed the troubling findings
of the Forensic Report from July. The resignation letter was filed as an exhibit to
Form 8-K filed with the SEC.

31.    On September 3, 2010 CNEP filed its Form 10-K for the year ending
December 31, 2009 with the SEC. CNEP's financial statements were included with
the 2009 Form 10-K.

32.    Included in the 2009 Form 10-K was the Report of Independent
Registered Public Accounting Firm stating:

The Board of Directors and Stockholders of:
China North East Petroleum Holdings Limited

We have audited the accompanying consolidated balance sheet of
China North East Petroleum Holdings Limited (the "Company") and

subsidiaries as of December 31, 2009, and the related consolidated statements of operations and comprehensive income, stockholders' equity and cash flows for the year then ended. These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audit.

**We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States).** Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provide a reasonable basis for our opinion.

**In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of the Company and subsidiaries as of December 31, 2009, and the results of its operations and cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.**

We have also audited the adjustments as described in Note 1 to the consolidated financial statements that were applied to restate the 2008 financial statements to correct the errors. In our opinion, such adjustments are appropriate and have been properly applied. We were not engaged to audit, review or apply any procedures to the 2008 financial statements of the Company other than with respect to the adjustments and accordingly, we do not express an opinion or any other form of assurance on the 2008 financial statements taken as a whole.

Class Action Complaint for Violation of the Federal Securities Laws

/s/ Baker Tilly Hong Kong Limited
BAKER TILLY HONG KONG LIMITED
Certified Public Accountants

Hong Kong
Date: September 3, 2010

(Emphasis Added)

33.     The SEC Action states that the financial statements included in the 2009 Form 10-K failed to properly disclose material related-party transactions. CNEP had only disclosed that as of December 31, 2009 the Company owed a stockholder $89,269. The 2009 Form 10-K did not disclose that the stockholder referenced was former CEO Wang and that the $89,269 was the net result of 176 related-party transactions between CNEP, Wang, and his mother, former director Ju. It also did not disclose that these transactions totaled approximately to $59 million.

34.     According to the SEC Action, the financial statements approved by Defendants in the 2009 Form 10-K did not (i) provide any information regarding the description of the transactions, (ii) the nature of the relationships involved, (iii) the amounts involves, (iv) the terms and manner of settlement of the transactions, (v) that many of these transactions involved the CEO's family members, and (vi) any other information that was deemed necessary to understand the significant and unusual transactions on the financial statements as required by U.S. GAAP.

35.     Defendants made materially false and misleading statements by (i) issuing the clean audit report containing an unqualified opinion filed with CNEP's financial statements in the 2009 Form 10-K, (ii) stating that the financial statements included were audited in accordance with PCAOB standards, (iii) stating that CNEP's financial statements fairly presented the Company's position and (iv) stating that these financial statements were in conformity with U.S. GAAP.

36.     Prior to issuing the clean audit report in the 2009 Form 10-K, Defendants had access to Forensic Report and yet did not take any action disclose or examine the red flags and weaknesses at CNEP. Defendants had ample time and the opportunity to review the Forensic Report and include its findings in its 2009 audit of CNEP.

37.     When CNEP resumed trading on September 9, 2010, the stock fell significantly, by $1.08 or almost 20% closing at $4.42 per share from the previous trading day of May 26, 2010.

38.     On March 1, 2012 the SEC notified CNEP that it was halting trading of the stock.

39.     On March 14, 2012 CNEP issued a press release stating that the SEC halted traded of the Company's stock and provided more detail as to why the stock was frozen. The press release states in relevant part:

HARBIN, CHINA and NEW YORK, March 14, 2012 – China North East Petroleum Holdings Limited (the "Company") (NYSE Amex: NEP), announced that as previously announced on March 1, 2012, the Company discovered that the Securities & Exchange Commission ("SEC") issued an Order of Suspension of Trading of the stock of the Company. **In the Order, the SEC stated that: "Questions have arisen regarding the accuracy and completeness of information contained in NEP's public filings with the Commission concerning, among other things, certain transfers of cash from the company's bank accounts to the personal bank accounts of related parties."**

The trading suspension appears related to an investigation the Staff of the SEC is conducting that addresses these issues. **Although the Company cannot be certain of the scope of the investigation, it appears that the principal focus is on various related party transactions aggregating approximately $3.9 million that occurred in 2009 and were identified in the previously-disclosed report provided to the Company by John Lees & Associates, the accuracy of the Company's books and records and financial statements concerning those transactions, and related disclosures in the Company's 2009 S-3 registration statement and S-8 registration statements.**
 (emphasis added)

40.     CNEP stock resumed trading on June 22, 2012. The price of CNEP shares nosedived since the previous trading day on February 29, 2012. The price fell $2.73 or almost 88% closing at $0.38 per share.

41.     CNEP shares continued on a downhill trend until the SEC revoked its registration on April 5, 2013. On its final day of trading, April 4, 2013, the price of CNEP closed at $0.18 per share.

42.     Defendants failed to follow PCAOB standards and U.S. GAAP and GAAS standards. Specifically by:

a. Failing to exercise due professional care and lacking professional skepticism (AU §§ 230 and 334).

    i. Defendants lacked professional training in U.S. GAAP. According to the SEC Action, Defendants Ross and Kwok receive only two days of U.S. GAAP training each year and Kwok admitted to not having previous experience auditing a U.S. issuer.

    ii. The proper level of care was not exercised because before issuing the audit opinion, Defendants knew about material related-party transactions including, but not limited to: loans to and from insiders, offsetting agreements, and investments by insiders on behalf of CNEP.

    iii. Defendants also failed to apply an adequate level of professional skepticism

b. Failed to Adequately Plan the Audit (AU §§ 311 and 316)

    i. Auditors must understand the events, transactions, and practices that may have a significant effect on the company it is auditing. Auditors are required to become familiar with the company in which it is auditing to understand the risks associated with the company.

Class Action Complaint for Violation of the Federal Securities Laws

ii.   Defendants failed to obtain a level of knowledge of CNEP's business that would enable them to plan and perform the audit in accordance with PCAOB standards.

iii.  Auditors are required to plan their audit. If there is a change in circumstances an auditor is supposed to take this into consideration in its planning.

iv.   Defendants did not have an adequate understanding of CNEP's business. Although retained in January 2010, Defendant Kwok did not meet any CNEP personnel in person until 2011 and before finalizing the 2009 audit, Defendant Ross never visited CNEP's offices, field operations or speak with the CNEP's CFO, Baker Tilly's main contact.

v.    According to the SEC, there is no evidence that Defendant Ross reviewed the audit planning documents. According to the PCAOB standards, Defendants would have to re-evaluate and modify their procedures when new information came to light. The Audit Plan, however, was never revised after Defendants received the Forensic Report which noted 176 related-party transactions occurred during 2009.

Class Action Complaint for Violation of the Federal Securities Laws

vi.  Defendants did not develop audit procedures that were designed to evaluate the risks presented by the related-party transactions.

c.  Failed to Design Procedures Tailored to the Risk of Misstatement and Failed to Properly Document Audit Risk (AU §§ 311 and 312)

i.  Auditors are required to implement risk assessment procedures when hired to assess financial statements in accordance with PCAOB standards. When there are indications of higher risk, the auditor may have to expand the procedures applied or modify the procedures to obtain more persuasive evidence.

ii.   The Forensic Report enlightened Defendants to CNEP's internal control deficiency regarding related-party transactions and the lack of control over management's ability to override internal controls to access CNEP's bank accounts. Due to all this information, Defendants should have identified additional risk areas and conducted additional testing to issue its audit report.

d.  Failed to Obtain Sufficient Competent Evidential Matter and Properly Audit Related-Party Transactions (AU §§ 326, 330, and 334)

19

i.   Auditors must obtain sufficient competent evidential matter to provide a reasonable basis for its audit opinion. Auditors must consider the risk of the material misstatements when choosing its procedures to achieve the audit objectives. Auditors know that evidence from independent sources is better evidential matter with greater reliability than inside sources. When related-party transactions are identified as a risk, auditors are required to obtain satisfactory information concerning the purpose, nature and extent of those transactions to understand the business purpose of the transaction. When these transactions occur, the auditor must ensure that the transaction is adequately disclosed in the financial statements. The higher the risk with related-party transactions, more additional procedures must be performed.

ii.  Defendant did not get sufficient evidence with regards to CNEP's related-party transactions to support the clean audit opinion they issued. Not only did Defendants fail to identify related parties, but they failed to identify the transactions themselves and to perform adequate procedures to gain an understanding of the business to determine the impact of these transactions on the business. Defendants did not

20

Class Action Complaint for Violation of the Federal Securities Laws

collect audit evidence that justified CNEP's failure to adequately disclose the material related-party transactions.

iii. According to the SEC Action, Defendant's workpapers do not show anyone from Baker Tilly made a meaningful inquiry to the nature or business purpose of the other material related-party transactions or performed substantive procedures to verify those transactions.

iv. According to the Forensic Report, there were post year-end adjustments which included transactions recording $5 million in "balance transfers" due from CNEP to Wang and Ju and $6.7 million related to "amount paid by Ms. Ju for acquiring Tian Cheng." There is no indication in Defendants' workpapers that they verified these post year-end adjustments.

v. One of the related-party transactions involved Wang's alleged capital infusion of $4.6 million into Song Yuan Technical, CNEP's subsidiary, on September 23, 2009. However, according to the SEC Action, conflicting information on CNEP's bank statement in connection with the 2009 offering proceeds indicate that the $4.6 million in question was transferred from CNEP not from Wang.

Defendants' workpapers contain conflicting information as to the source of the $4.6 million. Defendants failed to figure out and document the true source of these funds before issuing its clean audit opinion.

vi. When verifying if Wang was owed money from CNEP, Defendants sent confirmation papers directly to Wang, not a third-party, making a mockery of the "confirmation process." Sending these confirmations to Wang failed to satisfy the burden to determine the completeness, existence and accuracy of the purported debt to Wang.

e. Failed To Prepare and Retain Adequate Audit Documentation (AS 3)

i. In order to conduct an audit in accordance with PCAOB, Audition Standard No. 3 requires the audit documentation should contain sufficient information that another auditor with no connection with the engagement should understand the procedures performed, the results obtained, conclusions reached, who worked on the engagement and when such work was conducted.

ii. Defendants did not act in accordance with AS 3. The SEC Action stated that the workpapers do not consistently record

what procedures where performed, who performed the

procedures or the dates that the papers were reviewed.

Defendants' workpapers do not sufficiently reflect their

findings and conclusions about the related-party

transactions.

**Applicability of Presumption of Reliance:**
**<u>Fraud-on-the-Market Doctrine</u>**

43.     At all relevant times, the market for CNEP's common stock was an

efficient market for the following reasons, among others:

(a)     CNEP's stock met the requirements for listing, and was listed

and actively traded on the NYSE, a highly efficient and automated market;

(b)     During the class period, several hundreds of thousands of

CNEP stock were traded on a weekly basis on average, demonstrating a very

strong presumption of an efficient market;

(c)     As a regulated issuer, CNEP filed with the SEC periodic reports

during the Class Period;

(d)     CNEP regularly communicated with public investors via

established market communication mechanisms, including regular disseminations

of press releases on the national circuits of major newswire services and other

wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)    CNEP was followed by securities analysts who wrote reports that were distributed during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(g)    Unexpected material news about CNEP was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

44.    As a result of the foregoing, the market for CNEP's common stock promptly digested current information regarding CNEP from all publicly available sources and reflected such information in CNEP's stock price. Under these circumstances, all purchasers of CNEP's common stock during the Class Period suffered similar injury through their purchase of CNEP's common stock at artificially inflated prices, and a presumption of reliance applies.

### Applicability of Presumption of Reliance:
### _Affiliated Ute_

45.    Neither Plaintiff nor the Class need prove reliance – either individually or as a class because under the circumstances of this case, positive proof of reliance is not a prerequisite to recovery, pursuant to the ruling of the United States Supreme Court in _Affiliated Ute Citizens of Utah v. United States,_ 406 U.S. 128 (1972).  All that is necessary is that the facts withheld be material in

the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of CNEP during the Class Period and who were damaged thereby. Excluded from the Class are the defendants, the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which the defendants have or had a controlling interest.

47.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, CNEP's common stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery. Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by CNEP or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

48.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by the defendants' wrongful conduct in violation of federal law that is complained of herein.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by the Defendants' acts as alleged herein;

(b)     whether the misstatements and omissions alleged herein were made with scienter;

(c)     whether statements made by the Defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business, prospects, and operations of CNEP; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

Class Action Complaint for Violation of the Federal Securities Laws

## **FIRST CLAIM**

### **Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

52.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.    This First Claim is asserted against all Defendants.

54.    During the Class Period, the Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell CNEP common stock at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, the defendants, individually and as a group, took the actions set forth herein.

55.    The Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of CNEP as specified herein.

56.    The Defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of CNEP's value and performance and continued substantial growth,

27

which included the making of, or the participation in the making of, untrue

statements of material facts and omitting to state material facts necessary in order

to make the statements made about CNEP and its business operations and future

prospects in light of the circumstances under which they were made, not

misleading, as set forth more particularly herein, and engaged in transactions,

practices and a course of business that operated as a fraud and deceit upon the

purchasers of CNEP's common stock during the Class Period.

57.     Each of the Defendants' primary liability, and controlling person

liability, arises from the following facts: (1) the defendants were high-level

executives, directors, and/or agents at the Company during the Class Period and

members of the Company's management team or had control thereof; (2) each of

the defendants, by virtue of his responsibilities and activities as a senior officer

and/or director of the Company, was privy to and participated in the creation,

development and reporting of the Company's financial condition; (3) each of the

defendants enjoyed significant personal contact and familiarity with the other

defendants and was advised of and had access to other members of the Company's

management team, internal reports, and other data and information about the

Company's finances, operations, and sales at all relevant times; (4) each of the

defendants was aware of the Company's dissemination of information to the

investing public that they knew or recklessly disregarded was materially false and

misleading; and (5) each of the defendants culpably participated in the wrongful conduct alleged herein.

58.     The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing CNEP's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its common stock. As demonstrated by the Defendants' misstatements of the Company's financial condition and/or business prospects throughout the Class Period, the Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for CNEPs common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of CNEP's publicly-traded common stock were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by the defendants, or upon the integrity of the

market in which the Company's common stock trade, and/or on the absence of

material adverse information that was known to or recklessly disregarded by the

defendants but not disclosed in public statements by the Defendants during the

Class Period, Plaintiff and the other members of the Class acquired and/or sold

CNEP common stock during the Class Period at artificially high prices and were

damaged thereby.

60.   At the time of said misrepresentations and omissions, Plaintiff and

other members of the Class were ignorant of their falsity, and believed them to be

true. Had Plaintiff and the other members of the Class and the marketplace known

the truth regarding CNEP's financial results, which were not disclosed by the

defendants, Plaintiff and other members of the Class would not have purchased or

otherwise acquired CNEP common stock, or, if they had acquired such common

stock during the Class Period, they would not have done so at the artificially

inflated prices or distorted prices at which they did.

61.   By virtue of the foregoing, the defendants have violated Section 10(b)

of the Exchange Act, and Rule 10b-5 promulgated thereunder.

62.   As a direct and proximate result of the defendants' wrongful conduct,

Plaintiff and the other members of the Class suffered damages in connection with

their respective purchases and sales of the Company's common stock during the

Class Period.

Class Action Complaint for Violation of the Federal Securities Laws

63.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation Of Section 20(a) of The Exchange Act
### Against Ross and Kwok

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.     This Second Claim is asserted against Ross and Kwok.

66.     Ross and Kwok acted as controlling persons of Baker Tilly within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of Baker Tilly's operations and/or involvement in Baker Tilly's audit of CNEP, the Ross and Kwok had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Baker Tilly and its audit of CNEP, including the contents of CNEP's audit reports.

67.     In particular, Ross and Kwok had direct and supervisory involvement in the day-to-day operations of the Baker Tilly and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

68.     As set forth above, Baker Tilly violated Section 10(b) and Rule 10b-5. By virtue of their positions as controlling persons, Ross and Kwok are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Ross and Kwok's wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the CNEP's common stock during the Class Period.

69.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all the defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

Class Action Complaint for Violation of the Federal Securities Laws

(d)     Such other and further relief as the Court may deem just and

proper.

Class Action Complaint for Violation of the Federal Securities Laws

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: December 31, 2014          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**


/s/ Laurence Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws