BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599

MATTHEW M. GUINEY (*pro hac vice*)
guiney@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile:   212/545-4653

*Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FILIP LAMBERT, JIGNESH PATEL, and REILLY CHASE, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>BAKER TILLY HONG KONG LIMITED, ANDREW DAVID ROSS, and HELENA LAIHA KWOK,<br><br>      Defendants. | Case No. CV 14-09959-CBM(MANx)<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE: April 4, 2017<br>TIME: 10:00 a.m.<br>JUDGE: Hon. Consuelo B. Marshall<br>CTRM: 2 |

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 4, 2017, at 10:00 a.m., or as soon thereafter as this matter may be heard, Lead Plaintiff Filip Lambert and additional named plaintiffs Reilly Chase and Jignesh Patel (collectively, "Plaintiffs"), on behalf of themselves and the Class, shall move before the Honorable Consuelo B. Marshall, Judge of the United States District Court for the Central District of California, Western Division, Spring Street Courthouse, 312 N. Spring Street, Los Angeles, California 90012, for final approval of the proposed settlement of this class action.  Specifically, Plaintiffs respectfully request that the Court: (a) enter the [Proposed] Order and Final Judgment submitted herewith; (b) confirm certification of the Settlement Class; and (c) grant final approval to the Settlement of the terms and conditions set forth in the Stipulation and Agreement of Settlement, dated October 5, 2016, which was preliminarily approved in the Order Preliminarily Approving Settlement of Class Action.

This motion is made pursuant to the Court's Order Preliminarily Approving Settlement of Class Action, entered on December 6, 2016.  ECF No. 86.  Lead Counsel has conferred with counsel for Defendants pursuant to Civil Local Rule 7-3.  Defendants do not oppose the relief requested by this motion.  This motion is based upon this Notice of Motion and Motion for Final Approval of the Proposed Settlement and Plan of Allocation, Plaintiffs' Memorandum of Points and Authorities in Support Thereof, the Declaration of Matthew M. Guiney, the Stipulation and Agreement of Settlement, the Second Amended Complaint, any reply in further support, oral argument of counsel, the complete Court files and record in the above-captioned matter, and such additional matters as the Court may consider.

///

///

1

Dated: February 17, 2017

Respectfully submitted,

2

**WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP**

3

4

By:        /s/ Matthew M. Guiney
              MATTHEW M. GUINEY

5

6

MATTHEW M. GUINEY (*pro hac vice*)
guiney@whafh.com
270 Madison Ave.
New York, NY 10016
Telephone:   212/545-4600
Facsimile:    212/545-4653

7

8

9

10

11

FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
**WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619-239-4599
Facsimile:   619-234-4599

*Lead Counsel for the Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I. OVERVIEW OF THE LITIGATION .......................................................... 1

II. THE COURT SHOULD APPROVE THE
PROPOSED SETTLEMENT BECAUSE IT IS FAIR,
REASONABLE AND ADEQUATE TO THE CLASS ................................ 4

    A. Standard     .......................................................................... 4

    B. All of the Relevant Factors Employed by Courts
       in This Circuit Favor Approval of the Proposed Settlement ............... 6

        1. Strength of Plaintiffs' Case, and the Risk,
           Expense, Complexity and Likely Duration of
           Further Litigation ....................................................... 6

           a. Difficulty of Proving Exchange Act Claims ................... 6

           b. Risks of Proving Scienter ................................. 7

           c. Loss causation ................................................ 8

           d. Proportionate Liability ................................... 10

           e. Pragmatic Considerations ............................... 10

        2. The Amount Offered in the Settlement ...................... 12

        3. Risk of Maintaining a Class Action .......................... 17

        4. Stage of the Proceedings .......................................... 17

        5. Experienced Counsel Concur that the Settlement,
           Which was Negotiated in Good Faith and at
           Arm's-Length, is Fair, Reasonable, and Adequate ................. 18

        6. The Reaction of the Class Members to the Settlement ............ 20

III. THE COURT SHOULD APPROVE THE PLAN
OF ALLOCATION     .............................................................. 20

IV. CONCLUSION     .............................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Aarons v. BMW of N. Am., LLC*,
   No. CV 11-7667 PSG (CWx), 2014 U.S. Dist.
   LEXIS 118442 (C.D. Cal. Apr. 29, 2014) ........................................................ 9

*Antoine de Sejournet v. Goldman Kurland Mohidin LLP et al.*,
   No. 13-cv-1682-DMG-MRW, slip op.,
   ECF No. 106 (C.D. Cal. Feb. 12, 2016) ........................................................ 15

*Brown v. China Integrated Energy, Inc.*,
   No. 11-cv-02559-BRO-PLA, slip op.,
   ECF No. 352 (C.D. Cal. Aug. 19, 2015) ........................................................ 15

*Browne v. Am. Honda Motor Co.*,
   No. 09-6750 MMM (DTBx), 2010 U.S. Dist.
   LEXIS 145475 (C.D. Cal. July 29, 2010) ...................................................... 11

*City of Providence v. Aeropostale, Inc.*,
   No. 11-7132, 2014 U.S. Dist.
   LEXIS 64517 (S.D.N.Y. May 9, 2014) ............................................................ 7

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................... 4, 20

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ................................................................. 18

*Great Neck Capital Appreciation Inv. P'ship, L.P. v.*
*PricewaterhouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) .............................................................. 8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................... 5, 13, 20

*Hufnagle v. Rino International Corporation et al.*,
   No. 10-cv-8695-DDP-VBK, slip op.,
   ECF No. 297 (C.D. Cal. Dec. 11, 2015) ........................................................ 16

- ii -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Am. Apparel, Inc. S'holder Litig.*,
   No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist.
   LEXIS 184548 (C.D. Cal. July 28, 2014) ................................................9

*In re AOL Time Warner, Inc. Sec. Litig.*,
   503 F. Supp. 2d 666, 680 (S.D.N.Y. 2007) ......................................9, 10

*In re Cathode Ray Tube Antitrust Litig.*,
   No. 07-5944 JST, 2016 U.S. Dist.
   LEXIS 24951 (N.D. Cal. Jan. 28, 2016) ...............................................18

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d. Cir. 2001) .................................................................15

*In re Clarent Corp. Sec. Litig.*,
   No. 01-cv-3361, slip op.,
   ECF Nos. 475, 476 (N.D. Cal. Feb. 16, 2005) ........................................7

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................20

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 U.S. Dist.
   LEXIS 13555 (C.D. Cal. June 10, 2005) .......................................*passim*

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   32 F. Supp. 3d 464 (S.D.N.Y. 2014) .....................................................14

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454, 458 (9th Cir. 2000) ............................................5, 13, 20

*In re MicroStrategy, Inc. Sec. Litig.*,
   148 F. Supp. 2d 654, 668 (E.D. Va. 2001) ......................................20, 21

*In re Oracle Sec. Litig.*,
   No. C90-0931-VRW, 1994 U.S. Dist. LEXIS
   21593 (N.D. June 16, 1994) ..................................................................21

*In re Pfizer Inc. Sec. Litig.*,
   No. 4-cv-9866 LTS HBP, 2014 U.S. Dist.
   LEXIS 92951 (S.D.N.Y. July 8, 2014)................................................................9

*In re Rite Aid Corp. Sec. Litig.*,
   269 F. Supp. 2d 603 (E.D. Pa. 2003) ..............................................................8

*In re Safety Components Int'l, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ...................................................................8

*In re Software Toolworks Inc., Sec. Litig.*,
   50 F.3d 615 (9th Cir. 1994)..............................................................................7

*In re Sumitomo Cooper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) .............................................................13, 16

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .......................................................................12

*In re TD Ameritrade Acc't Holder Litig.*,
   No. C07-2852 SBA, 2011 U.S. Dist.
   LEXIS 103222 (N.D. Cal. Sept. 13, 2011) ....................................................18

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)...............................................................8

*In re Tenet Healthcare Corp. Sec. Litig.*,
   No. CV 02-8462 RSWL (RZx), 2007 U.S. Dist.
   LEXIS 97821 (C.D. Cal. Dec. 5, 2007) ..........................................................16

*In re Warner Comm. Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985).....................................................................9

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 U.S. Dist.
   LEXIS 24300 (N.D. Cal. July 18, 1997).................................................4, 5, 6, 18

*McEwen v. Digitran Sys., Inc.*,
   49 F. Supp. 2d 1293 (D. Utah 1999) ................................................................8

*N.M. State Investment Council v. Ernst & Young LLP*,
    641 F.3d 1089 (9th Cir. 2011 ................................................................. 7

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................ 12, 17, 20

*Nguyen v. Radient Pharm. Corp.*,
    No. SACV-11-00406 DOC (MLGx), 2014 U.S. Dist.
    LEXIS (C.D. Cal. May 6, 2014) ............................................................ 8

*Nobles v. MBNA Corp.*,
    No. 06-3723 CRB, 2009 U.S. Dist.
    LEXIS 59435 (N.D. Cal. June 29, 2009) .............................................. 10

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................... 5, 12, 13, 14

*Perkins v. LinkedIn Corp.*,
    No. 13-cv-04303-LHK, 2016 U.S. Dist.
    LEXIS 18649 (N.D. Cal. Feb. 16, 2016) ............................................... 5

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................................ 17

*Roberti v. OSI Sys., Inc.*,
    No. CV-13-09174 MWF (MRW), U.S. Dist.
    LEXIS 164312 (C.D. Cal. Dec. 8, 2015) ........................................... 5, 18

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................... 18

*Shames v. Hertz Corp.*,
    No. 07-cv-2174-MMA (WMC), 2012 U.S. Dist.
    LEXIS 158577 (S.D. Cal. Nov. 5, 2012) ............................................. 15

*Viscaino v. U.S. District Court*,
    173 F.3d 713, 721 (9th Cir. 1999) ....................................................... 17

**Statutes**

15 U.S.C.
§ 78u–4(f)(2)(B)(i)...................................................................................10
§ 78u–4(f)(2)(B)-(3)(A)..............................................................................14

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (THIRD)
§ 30.42 (1995) ...........................................................................................19

**Rules**

Federal Rule of Civil Procedure
23(c)(1)......................................................................................................17
23(e) .......................................................................................................1, 4

Lead Plaintiff Filip Lambert ("Lambert") and additional named plaintiffs Reilly Chase and Jignesh Patel, on behalf of themselves and the proposed Settlement Class, submit this memorandum of points and authorities in support of their motion, pursuant to Federal Rule of Civil Procedure 23(e) for final approval of the class action Settlement, as set forth in the Stipulation.[1]

This Action has been settled for a $925,000 cash payment.  The Settlement will inure to the benefit of investors in China North East Petroleum Holdings Ltd. ("CNEP"), who are unlikely to obtain any recovery from CNEP or its executives. The Defendants are Baker Tilly Hong Kong Limited ("BTHK"), CNEP's auditor, and Andrew Davis Ross (collectively with BTHK, the "Defendants" and with Plaintiffs "the Settling Parties"), the BTHK partner in charge of the audit of CNEP's financial statements.[2]  The Settlement results from Plaintiffs' vigorous case prosecution and arm's-length settlement negotiations between the parties.

# I.   OVERVIEW OF THE LITIGATION

This Litigation commenced on December 31, 2014, when the first plaintiff filed an initial complaint (the "Initial Complaint").  Declaration of Matthew M. Guiney, submitted herewith, ("Guiney Decl.") at ¶ 2.  The Initial Complaint alleged violations of the federal securities laws on behalf of all purchasers of CNEP common stock, who were damaged when the truth about CNEP's financial statements generally and BTHK's audit certification specifically were revealed. The Court subsequently appointed Mr. Lambert as Lead Plaintiff and Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel on April 6, 2015.  After

---

[1]   Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation and Agreement of Settlement, dated October 5, 2016 (the "Stipulation").

[2]   Defendant Helena Laiha Kwok has not appeared in this Litigation and thus, is not a party to this Settlement.

- 1 -

conducting additional research and investigation, Lead Plaintiff filed the First Amended Complaint against Defendants on October 13, 2015.  Guiney Decl. at ¶ 3.  On December 14, 2015, the Settling Defendants moved to dismiss the First Amended Complaint.  After briefing on the motion to dismiss was completed, the parties presented oral arguments to the Court on February 23, 2016.  The following day, the Court granted the Settling Defendants' motion to dismiss without prejudice and granted Lead Plaintiff leave to amend his complaint.

On March 10, 2016, Lead Plaintiff filed the Second Amended Complaint. The Settling Defendants renewed their motion to dismiss.  On May 23, 2016, after briefing on the second motion to dismiss was completed, the Court denied the Settling Defendants' Motion to Dismiss the Second Amended Complaint.

On June 6, 2016, the Settling Defendants filed their Answer to the Second Amended Complaint.  On August 23, 2016, the parties filed a Stipulation Taking Scheduling Conference Off Calendar and Setting Time for Parties to Submit Motion For Preliminary Approval of Settlement.  On August 25, 2016, the Court ordered that the scheduling conference, which was at the time scheduled for September 6, 2016 at 10:00 a.m., be removed from the calendar and that Lead Plaintiff shall file any motion for preliminary approval of settlement by no later than October 11, 2016.

After the Court denied the Settling Defendants' second motion to dismiss, the parties began a dialogue concerning the possible resolution of the Litigation. Guiney Decl. at ¶ 4.  The Settling Parties' counsel engaged in arm's-length and vigorous negotiations and ultimately reached an agreement in principle to settle the Litigation for $925,000 to be paid exclusively by the Settling Defendants' insurance carrier for the benefit of the Settlement Class.  Guiney Decl. at ¶ 5.  The $925,000 proposed Settlement represents a considerable portion of the Settling Defendants' available insurance liability policy.   Guiney Decl. at ¶ 6.   The

- 2 -

Settling Parties have subsequently negotiated the Settlement, which sets forth the final and binding agreement to settle this Litigation as to the Settling Parties, and executed the Stipulation on October 5, 2016.

Reached by qualified, experienced litigators after a comprehensive investigation conducted by Lead Counsel, the proposed Settlement is the result of a fully-informed and arm's-length bargaining process. Guiney Decl. at ¶ 7. The $925,000 proposed Settlement is an excellent result for the Settlement Class, when considering the risk if the Litigation proceeded through such hurdles as discovery, class certification, summary judgment, trial and potential appeals. Guiney Decl. at ¶ 8.

The Plaintiffs subsequently filed an unopposed motion for entry of order preliminarily approving settlement and establishing notice procedures and on December 6, 2016, this Court entered an order granting preliminary approval of the settlement and setting a calendar for distribution of notice to the Class along with briefing of and a hearing for final approval of the Settlement. ECF No. 86.

The parties have complied with the Court's preliminary approval order and its schedule for dissemination of the Notice, Summary Notice and Proof of Claim. The Court-approved Claims Administrator — Strategic Claims Services — mailed the Notice and Proof of Claim by first-class mail, postage prepaid, within the 28-calendar-day deadline that the Court set. Guiney Decl. at ¶ 9. *See also* Ex. A (mailing affidavit of Josephine Bravata). As set forth in the mailing affidavit, to date, more than 18,000 claim packets, including the detailed "Notice of Pendency and Settlement of Class Action," (the "Notice") and "Proof of Claim and Release" form have been sent by first-class mail to potential Settlement Class Members, and a Summary Notice has been timely published on *Globe Newswire*. The deadline to object to any aspect of the Settlement and to request exclusion is March 14, 2017. To date, there have been **no objections** and **no requests** for

- 3 -

exclusion.  Guiney Decl. at ¶ 10.

As set forth below, the Settlement results from a realistic assessment by knowledgeable and experienced attorneys of the risks of further proceedings. These risks include the inherent risks of proving the scienter of an outside auditor, the risks of proving loss causation and damages, the risks that a jury will find Defendants' proportionate fault minimal, and the risks that the Class will never collect on any judgment it obtains.  Instead, the Settlement confers an immediate and substantial benefit on the Settlement Class.  In fact, the Settlement provides a recovery of approximately **23%** of the Class's estimated damages amount based upon the estimated percentage of fault a jury may allocate to the Settling Defendants.  The Settlement also eliminates the risk, expense and uncertainty of continued litigation under circumstances where a more favorable outcome was at great risk.  By any measure, the Settlement is fair, reasonable, and adequate, and is an excellent result for the Class.  Guiney Decl. at ¶ 11.

## II.   THE COURT SHOULD APPROVE THE PROPOSED SETTLEMENT BECAUSE IT IS FAIR, REASONABLE AND ADEQUATE TO THE CLASS

### A.   Standard

Federal Rule of Civil Procedure 23(e) provides that the court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses.  In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  Thus, in assessing the Settlement under Rule 23(e), the Court must only confirm that this private consensual agreement negotiated between the Parties to settle this Action (a) is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that (b) the

- 4 -

Settlement, taken as a whole, is fair, reasonable and adequate to all concerned. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

There is no prescribed settlement approval procedure to be followed in this Circuit.  Rather, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [the trial judge] is exposed to the litigants, and their strategies, positions and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotations omitted). To avoid excessive intrusion into the parties' compromise, the Court shall consider the settlement as a whole, rather than its individual component parts and examine it for overall fairness. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.* at 625.   Rather, the views of counsel, "who are experienced in litigating and settling complex . . . class actions," that  a settlement is fair "weigh in favor of final approval." *Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649, at *8 (N.D. Cal. Feb. 16, 2016); *see also Roberti v. OSI Sys., Inc.*, No. CV-13-09174 MWF (MRW), U.S. Dist. LEXIS 164312, (C.D. Cal. Dec. 8, 2015) (*quoting Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997)).

As explained below, the Settlement was reached after extensive investigation and litigation by experienced counsel on both sides, and then only after protracted arms-length negotiations. Under these circumstances, the Settlement has the presumption of fairness.

///
///
///

- 5 -

## B. All of the Relevant Factors Employed by Courts in This Circuit Favor Approval of the Proposed Settlement

To determine whether a proposed settlement is fair, reasonable, and adequate, a court must examine the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the risk of maintaining class status through trial; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242. These factors all support approval of the proposed Settlement.

### 1. Strength of Plaintiffs' Case, and the Risk, Expense, Complexity and Likely Duration of Further Litigation

Although Plaintiffs survived Defendants' motion to dismiss (only after the Court first dismissed the case), to succeed in establishing liability, Plaintiffs must prove both that CNEP's financial statements were false (the "False Financial Statements") *and* that Defendants acted with scienter in issuing false and misleading audit opinions concerning these financial statements.  In addition, Plaintiffs faced Defendants' loss causation arguments and, although ultimately successful at the pleading stage, faced additional hurdles associated with those arguments as the case proceeded.

### a. Difficulty of Proving Exchange Act Claims

In addition to the general risks of any litigation, a heightened level of risk existed because this Action is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which significantly raised the standard for investors to successfully prosecute securities class actions. "[S]ecurities class actions are . . . notably difficult and notoriously uncertain to litigate." *City of Providence v. Aeropostale, Inc.*, No. 11-7132, 2014 U.S. Dist.

- 6 -

LEXIS 64517, at *14 (S.D.N.Y. May 9, 2014) (internal quotations omitted); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *25 (C.D. Cal. June 10, 2005) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").

### b.   Risks of Proving Scienter

An auditor's negligence (or even gross negligence) is insufficient to constitute securities fraud. Rather, the plaintiff must prove that "the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *In re Software Toolworks Inc., Sec. Litig.*, 50 F.3d 615, 628 (9th Cir. 1994) (internal quotations omitted).

While Plaintiffs believe they have strong claims, auditor liability cases are *extremely* difficult to prove:

> Typically, pleading sufficient facts to support a strong inference of scienter by an outside auditor is difficult because outside auditors have more limited information than, for example, the company executives who oversee the audit. Further, an auditor exercises complex and subjective professional judgments that courts are not ideally positioned to second guess.

*N.M. State Investment Council v. Ernst & Young LLP*, 641 F.3d 1089, 1097 (9th Cir. 2011) (internal quotations omitted).

Indeed, even when juries have found companies liable, they have refused to enter verdicts against the companies' auditors. *In re Clarent Corp. Sec. Litig.*, No. 01-cv-3361, slip op., ECF Nos. 475, 476 (N.D. Cal. Feb. 16, 2005) (jury verdict

- 7 -

finding company defendant liable but auditor not liable); *McEwen v. Digitran Sys., Inc.*, 49 F. Supp. 2d 1293, 1295 (D. Utah 1999) (same). Thus, while "any claim requiring proof of an intentional mental state presents challenges,"[3] it is even more burdensome and demanding to prove the scienter of an independent auditor. *See In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003) *vacated and remanded on other grounds*, 396 F.3d 294 (3d Cir. 2005).   In fact, to Plaintiffs' knowledge, no jury has *ever* returned a verdict finding an auditor liable in a securities class action subject to the PSLRA, which governs such actions filed after 1995.  Guiney Decl. ¶ 12.  Accordingly, defendant auditors utilize this leverage to their advantage and settlements against auditors are typically quite small even when the auditors are large and well-funded. *See In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 90, 93 (D.N.J. 2001) (approving $0.5 million Arthur Andersen contribution to total $4.5 million settlement, or 11.1% of the total, in large damages case against); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 405 (E.D. Wis. 2002) (approving $1,000,000 PwC auditor contribution to total $10.150 million settlement, or 9.9%).   Although not an insurmountable burden, Plaintiffs did acknowledge the risk in meeting a difficult standard in settlement of this Action.  Guiney Decl. ¶ 13.

### c.    Loss causation

Plaintiffs would also have had to prove loss causation – that Defendants' false statements were the proximate cause of the investors' losses and that the revelation of the truth caused the price of BTHK's stock to fall.  These elements

---

[3]     *Nguyen v. Radient Pharm. Corp.*, No. SACV-11-00406 DOC (MLGx), 2014 U.S. Dist. LEXIS at *6 (C.D. Cal. May 6, 2014); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008) ("Proving a defendant's state of mind is hard in any circumstances").

can only be proven through expensive, complex, and risky expert testimony.  *In re Pfizer Inc. Sec. Litig.*, No. 4-cv-9866 LTS HBP, 2014 U.S. Dist. LEXIS 92951, at *12 (S.D.N.Y. July 8, 2014) (entering summary judgment in favor of defendants after excluding Plaintiffs' experts on damages pursuant to *Daubert*); *see also In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548, at *94 (C.D. Cal. July 28, 2014) (noting that plaintiffs must turn to experts to disaggregate losses from nonactionable and actionable factors). Defendants would retain their own expert(s), who would testify that other factors caused BHTK's stock price collapse.  In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.  *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985); *see also Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 U.S. Dist. LEXIS 118442, at *26 (C.D. Cal. Apr. 29, 2014) ("battle of the experts" are "inherently risky").

Loss causation is particularly challenging against an auditor, because the plaintiffs must show that it is the auditor's opinion, which caused their losses, rather than the company's "much more consequential and numerous" false statements.  *See In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 680 (S.D.N.Y. 2007).  Indeed, Defendants vigorously argued that Plaintiffs had not adequately alleged loss causation at the motion to dismiss stage of the litigation and the Court first dismissed Plaintiffs' complaint as a result. Defendants undoubtedly would have continued to press the argument that Plaintiffs could not ultimately satisfy the burden of proving loss causation had the Action continued.  Guiney Decl. ¶ 14.

#### d.      Proportionate Liability

The PSLRA provides that "a covered person against whom a final judgment is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person [. . . .]" 15 U.S.C. § 78u–4(f)(2)(B)(i).   Consequently, Plaintiffs had to take into consideration the fact that the Defendants here were the auditors for CNEP, the underlying issuer that allegedly misrepresented its financial results.  As a result, Plaintiffs had to consider the high likelihood that any jury could ascribe a small or even no percentage of responsibility to the Defendants here.  *AOL Time Warner*, 503 F. Supp. 2d at 680 (company's alleged misstatements in its financial statements were "much more consequential and numerous" than auditor's opinion).  Guiney Decl. ¶ 15.

#### e.      Pragmatic Considerations

Continued litigation would be risky and expensive. Regardless of the ultimate outcome, there is no question that further litigation would be expensive and complex. It is widely acknowledge that class-action litigation is inherently complex. *See, e.g., Nobles v. MBNA Corp.*, No. 06-3723 CRB, 2009 U.S. Dist. LEXIS 59435, at *5 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). Courts recognize that securities class actions, in particular, are typically complex and expensive to prosecute. *See, e.g., Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555.  This securities action is no exception.

For class certification, Plaintiffs would have had to procure expert opinions on market efficiency (as would Defendants). Class certification would have involved continued discovery including expert depositions, briefing, and argument.  Guiney Decl. ¶ 16.

With respect to merits discovery, the Parties could anticipate — given the

complexities of the issues — reviewing thousands of auditing related documents and taking a substantial number of depositions, including depositions of Defendants, Defendants' personnel, and personnel involved with the audit, as well as any third-parties involved with the audit.  In addition, Defendants are located in Hong Kong.  Following the close of merits discovery, Plaintiffs would have to procure expensive and complex expert testimony to prove loss causation and damages.  Guiney Decl. ¶ 17.  The Parties would engage in expert discovery on those issues. Defendants would present their own expert testimony to demonstrate that the alleged stock drop was not proximately caused by the revelation of the fraud, and/or attempt to demonstrate that at least a portion of the alleged stock drop was attributable to other things unrelated to the revelation of the fraud. Guiney Decl. ¶ 18.  Consequently, expert discovery and trial preparation would be expensive and complex. *See Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (class actions have a well-deserved reputation as being the most complex).

The likely duration and expense of further litigation also supports a finding that the Settlement is fair, reasonable, and adequate. Even if a class had been certified and Plaintiffs withstood Defendants' likely motion for summary judgment, continued prosecution of the action would be complex, expensive, and lengthy with a more favorable outcome than the Settlement highly uncertain. *See Browne v. Am. Honda Motor Co.*, No. 09-6750 MMM (DTBx), 2010 U.S. Dist. LEXIS 145475, at *37 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class certification and tried the case, it could have consumed substantial party and court resources. There is a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'") (internal citation omitted).

After trial, any appeal would have to be resolved by the Ninth Circuit, one of the busiest circuit courts in the nation. Thus, the present value of a cash

- 11 -

recovery at this time, as opposed to the mere chance for a greater one down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the risk that the Settlement Class could receive no recovery.

At this point, over two years into the Litigation, Plaintiffs are aware of the strengths and weakness of their case. Despite the perceived strength of Plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation clearly support approval of the Settlement. *See In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) (finding the district court abused its discretion in granting defendants' summary judgment motion after the parties notified the court of entering into a binding class action settlement); *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (internal citation omitted).

Additionally, BTHK is a small audit firm located in Hong Kong with, to the best of Plaintiffs' knowledge, no assets in the United States. Guiney Decl. ¶ 19. Defendant Ross is similarly located outside of the United States. Guiney Decl. ¶ 20. Indeed, the only asset immediately available to Plaintiffs is the underlying insurance policy. The Settlement recovers $925,000, a considerable percentage of Defendants' available insurance liability policy. The Settlement confers an immediate, reasonable, and valuable cash benefit to Class Members – one that negates the very real risks to recovery posed by continued litigation.

## 2.    The Amount Offered in the Settlement

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Nor is the proposed Settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at

- 12 -

625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (internal quotations and citation omitted). In fact, a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *See Mego*, 213 F.3d at 459.

In addition, estimating damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. In this case, the Plaintiffs' estimate of potential maximum recoverable damages, assuming that Plaintiffs prevailed on *all* claims and overcame *all* defenses, was at most approximately $39 million. Guiney Decl. ¶ 21. But that number would be reduced or eliminated entirely if the Court or jury accepted some or all of Defendants' defenses, including their claims that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions. Had the case been tried, there was a fair possibility that the damages could have been lower or even zero. *See, e.g., Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *26 (citing *In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (where the court recounted several instances where settlement was rejected by a court only to have the recovery generated by continued litigation ultimately be less than the proposed settlement)). Furthermore, Defendants argued that the class's total damages did not exceed $20 million, and further argued that Defendants' proportionate liability as auditors would further significantly reduce the damages that Plaintiffs could ever recover from the Defendants in this case. Guiney Decl. ¶ 22.

- 13 -

In light of the foregoing, Defendants' payment of $925,000 in cash to the Class will provide an excellent recovery under the circumstances. Specifically, the PSLRA's proportionate liability provision (15 U.S.C. § 78u-4(f)(2)(B)-(3)(A)) provides that liability for any judgment must be apportioned based upon any wrongdoer's percentage of responsibility. However, the trial of a senior executive also accused of recklessly failing to detect fraud is instructive. In *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 32 F. Supp. 3d 464, 474 (S.D.N.Y. 2014), the plaintiffs sued a company's Canada-based CFO for failing to review information he had a duty to consider, while the company's China-based CEO committed massive fraud in its China-based operations. The case went to trial, and the jury found for the plaintiffs. But the jury found that the CFO was only 1% liable for the fraud.[4]   The jury's verdict left the class with a *de minimis* recovery. Defendants here would no doubt have argued that, like the *Longtop* CFO, their responsibility for the fraud is not substantial.

Although it is impossible to accurately predict what percentage of fault a jury would allocate to Defendants, the Settlement is an excellent result given the risks inherent in this litigation. Guiney Decl. ¶ 23. Indeed, even if it is assumed that a jury would find BTHK to be 20% at fault – not a guaranteed proposition by any means – a settlement of $925,000 represents approximately **23%** of Defendants' estimated damages attributable to BTHK. Guiney Decl. ¶ 24. As set forth below, this percentage recovery is **significantly** **higher** than the percentages approved in similar cases in this district and, as a consequence, the Settlement plainly meets this Circuit's requirements for approval. *See, e.g., Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to

---

[4]     *In re Longtop Fin. Tech. Ltd. Sec. Litig.*, No. 11-cv-3658-SAS, Notice to Class Members, ECF No. 294-2, at 1, *available at* http://www.longtopclassaction.com/docs/LTP_Notice.pdf.

only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair"); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses); *see also* Guiney Decl. at Ex. B (Svetlana Starykh and Stefan Boettsich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* (NERA 25 Jan. 2016) at 33, Fig. 29 (the median ratio of settlements between 1996 and 2015 to investment losses was 8.6% for cases alleging investor losses of between $20 and $49 million); at 34, Fig. 30 (the median ratio of settlements to investor losses in 2015 was 1.6%)). Further, the Settlement offers an immediate recovery – rather than the chance of a recovery years down the road. *Shames v. Hertz Corp.*, No. 07-cv-2174-MMA (WMC), 2012 U.S. Dist. LEXIS 158577, at *15 (S.D. Cal. Nov. 5, 2012) (immediacy of recovery weighs in favor of settlement).[5]

Indeed, during the approximately 15 teleconferences conducted concerning settlement, Defendants repeatedly pointed to two analogous cases that illustrate the success achieved here. First, *Antoine de Sejournet v. Goldman Kurland Mohidin LLP et al.*, No. 13-cv-1682-DMG-MRW, slip op., ECF No. 106 at 13-14 (C.D. Cal. Feb. 12, 2016). In that case, Plaintiffs observed that "[s]ettlements against auditors are typically quite small even when the auditors are large and well-funded." The plaintiffs in that action estimated their damages to be $52.6 million. Plaintiffs' counsel in that case estimated that, at trial, a jury would likely put the auditor's percentage of fault at 20%. The district court approved a

---

5    *See Brown v. China Integrated Energy, Inc.*, No. 11-cv-02559-BRO-PLA, slip op., ECF No. 352 (C.D. Cal. Aug. 19, 2015) (final approval of settlement with auditor defendants for $400,000); *Sejournet v. Goldman Kurland Mohidin LLP*, No. 13-cv-01682-DMG-MRW, slip op., ECF No. 113 (C.D. Cal. Mar. 18, 2016) (Order and Final Judgment) (final approval of settlement with auditor defendants for 2.4% of total damages).

settlement with the auditor for $1.425 million, which represented 13.6% of the class's estimated damages based upon 20% estimated percentage of fault. Second, *Hufnagle v. Rino International Corporation et al.*, No. 10-cv-8695-DDP-VBK, slip op., ECF No. 297 at 10 (C.D. Cal. Dec. 11, 2015).  In that case, the plaintiffs' alleged damages in *Hufnagle* were $157.9 million.  For purposes of settlement, the parties estimated that a jury would find the auditor 20% at fault. The court approved a settlement with the auditor for $1.685 million, which represented 5.3% of the class's estimated damages based upon 20% estimated percentage of fault.

Finally, Plaintiffs' estimated recovery figure is based upon their calculation of provable damages, and does not take into account Defendant's various defenses.  Guiney Decl. ¶ 25.  Consequently, had the case been tried, there was a fair possibility that the damages ultimately proved could have been lower. *See, e.g., Heritage*, 2005 U.S. Dist. LEXIS 13555, at *26 (citing *In re Sumitomo Cooper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999), where the court recounted several instances where settlement was rejected by a court only to have the recovery generated by continued litigation ultimately be less than the proposed settlement).

Lead Counsel also contended with Defendants' argument that in *In re Tenet Healthcare Corp. Sec. Litig.*, No. CV 02-8462 RSWL (RZx), 2007 U.S. Dist. LEXIS 97821, at *8 (C.D. Cal. Dec. 5, 2007), the district court held that evidence of prior SEC consent orders is inadmissible under Rules 403 and 408.  This argument, if successful, would ***significantly*** compromise Plaintiffs' ability to prove the case at trial as the consent order entered into between Defendants and the SEC would be a significant evidentiary document.

- 16 -

### 3. Risk of Maintaining a Class Action

The Court's certification order is merely conditional. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *See, e.g., Viscaino v. U.S. District Court*, 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or amended "before the decision on the merits"). Because maintaining a class action to judgment is an expensive and risky enterprise, a fair and reasonable settlement is preferable to years of uncertainty. *See Heritage*, 2005 U.S. Dist. LEXIS 13555, at *23 ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results") (citing *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation omitted)).

Similarly, because the scope of a class wide judgment is a greater detriment to a defendant than an individual action, even after an adjudication on the merits, the risk of ultimately not prevailing remains high. *See, e.g., National Rural*, 221 F.R.D. at 527 (if a class action obtains a successful judgment, an appeal is likely to follow); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1446 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal).

### 4. Stage of the Proceedings

Lead Plaintiff, through Lead Counsel, has extensive knowledge of the factual and legal issues in this Litigation.  The Settling Parties' respective positions on liability were discussed and analyzed aggressively through briefing and numerous settlement discussions.  In addition, Lead Plaintiff filed a thirty-two page First Amended Complaint and a thirty-six page Second Amended Complaint after extensive factual investigation and legal research into the intricacies concerning auditor liability in the context of a securities law violation.

- 17 -

Further, the Settling Parties have twice briefed a motion to dismiss in this Litigation and substantial informal discovery and investigation has been conducted.  As a result, Lead Counsel understands the legal issues and evidentiary strengths and weaknesses of this matter. The parties need not have engaged in more extensive formal discovery as long as they have engaged in sufficient investigation of the facts to enable the parties and the Court to intelligently make an appraisal of the Settlement. *Linney*, 151 F.3d at 1239 ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement") (internal citation omitted). *In re TD Ameritrade Acc't Holder Litig.*, No. C07-2852 SBA, 2011 U.S. Dist. LEXIS 103222 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery).

Plaintiffs and Co-Lead Counsel were in an excellent position to evaluate the strengths and weaknesses of their allegations against Defendants, and the defenses raised thereto, as well as the substantial risks of continued litigation, and to be in a position to conclude that the Settlement provides a fair, adequate, and reasonable recovery, and is in the best interests of the Class. *Roberti*, 2015 U.S. Dist. LEXIS 164312, at *9 (similar stage of proceedings weighs in favor of final approval).

### 5. Experienced Counsel Concur that the Settlement, Which was Negotiated in Good Faith and at Arm's-Length, is Fair, Reasonable, and Adequate

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (internal citation omitted).  *Accord In re Cathode Ray Tube Antitrust Litig.*, No. 07-5944 JST, 2016 U.S. Dist. LEXIS 24951, at *222-23 (N.D. Cal. Jan. 28, 2016) (citing *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980)

- 18 -

("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

A "presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery." *Heritage Bond Litig.*, U.S. Dist. LEXIS 13555, at *32, (citing MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

This case has been litigated by experienced and well-respected counsel on both sides. Indeed, Lead Counsel has been litigating on behalf of CNEP investors against Defendants since 2014. Lead Counsel is intimately familiar with the strengths and weaknesses of the case and the core facts, and wholeheartedly recommends this Settlement as fair, reasonable, and adequate. Indeed, Lead Counsel believes that the Settlement is an excellent result for the Class.

Lead Counsel has many years of experience in litigating securities class actions throughout the country — including within this Circuit and District in particular — and in assessing the respective merits of each side's case. Guiney Decl. ¶ 26, Ex. C. Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by very skilled and highly respected counsel. Defendants' counsel brought considerable experience and expertise to bear and vigorously defended this Action. Guiney Decl. ¶ 27.

In the face of this knowledgeable and formidable defense, Lead Counsel were nonetheless able to develop a case that was sufficiently strong to tentatively overcome the heightened pleading standard of the PSLRA, and persuade Defendants and their insurance carriers to settle on terms that are favorable to the Settlement Class. That Lead Counsel recommend the settlement in these circumstances is entitled to a presumption of correctness.

The Court appointed Lead Plaintiff also supports the Settlement. Guiney Decl. ¶ 28 and Ex. D. This is additional evidence that the Settlement is fair,

- 19 -

reasonable, and adequate. Under the PSLRA, the Lead Plaintiff's support for a settlement should be accorded "special weight because [the Lead Plaintiffs] may have a better understanding of the case than most members of the class." *National Rural*, 221 F.R.D. at 528 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.44 (1995)). Lead Plaintiff's support favors Court approval.

### 6. The Reaction of the Class Members to the Settlement

Pursuant to the Court's Notice Order, over 18,000 notices were sent to Class Members to date and Summary Notice was published in *Globe Newswire* on January 5, 2017. Guiney Decl. ¶ 29 and Ex. A. The deadline to exclude oneself from the settlement and the deadline to object to the settlement or be excluded is March 14, 2017. Guiney Decl. ¶ 30. To date, not a single request for exclusion and ***no objections*** have been received to the Settlement, Plan of Allocation, or any other aspect of the Settlement. Guiney Decl. ¶ 31. "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon,* 150 F.3d at 1027; *see also Mego Fin. Corp.*, 213 F.3d at 458.

## III.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 U.S. Dist. LEXIS 13555, at *37. "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (internal citation omitted).

"To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)). "A plan of allocation that reimburses class members based on the

extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3-4 (N.D. Cal. June 16, 1994) (citation omitted). Therefore, as noted in *MicroStrategy*, 148 F. Supp. 2d at 669:

> [A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.

The proposed Plan of Allocation herein was fully described in the Notice sent to the Class, at pages 11-12.  It was formulated by Lead Counsel, in consultation with the claims administrator, with the goal of reimbursing Class members in a fair and reasonable manner. Each similarly situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, $925,000 plus interest, less attorneys' fees and expenses). The Plan of Allocation does not discriminate between Class Members. In short, the Plan of Allocation has a rational basis and fairly compensates Class Members, and this Court should approve it.

## IV.     CONCLUSION

Because the Settlement and the Plan of Allocation are fair, reasonable, and adequate, Plaintiffs respectfully request that the Court enter the Proposed Final Order and Judgment finally approving the Settlement as fair, reasonable and adequate.

Dated: February 17, 2017                          Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

- 21 -

1

By:      /s/ Matthew M. Guiney
         MATTHEW M. GUINEY

2

3       MATTHEW M. GUINEY (*pro hac vice*)

4       guiney@whafh.com
        270 Madison Ave.

5       New York, NY 10016

6       Telephone:   212/545-4600
        Facsimile:    212/545-4653

7

8       BETSY C. MANIFOLD (182450)

9       manifold@whafh.com
        RACHELE R. RICKERT (190634)

10      rickert@whafh.com

11      MARISA C. LIVESAY (223247)
        livesay@whafh.com

12      **WOLF HALDENSTEIN ADLER**

13        **FREEMAN & HERZ LLP**

14      750 B Street, Suite 2770

15      San Diego, CA 92101
        Telephone:  619-239-4599

16      Facsimile:   619-234-4599

17      *Lead Counsel for the Class*

18

19

20

21

22

23

24

25

26

27

CNEP: 23704

28

- 22 -